**Lu Green, Jr., Appellee, v. William Ryan, Jr., Appellant.**

**Gen. No. 7,985.**

1. CUSTOMS AND USAGES—*presumption of dealing with reference to custom as authority for proof thereof.* Evidence of general custom in a particular market may be introduced on the presumption that he who deals in that market knows the customs thereof.

2. SALES—*implied warranty of animal purchased for breeding purposes.* Implied warranty that a cow is fit for breeding arises from her purchase at a sale of breeding cattle.

3. APPEAL AND ERROR—*presumption as to verdict where weight of evidence depends upon credibility of witnesses.* If the weight of evidence depends on the relative credibility of witnesses and the jury found for appellee, the Appellate Court cannot say that the verdict was against the weight of the evidence.

4. SALES—*demand as prerequisite to recovery of purchase price on failure of warranty.* Without prior demand for repayment vendee may recover for the purchase price of a cow failing to fulfil the warranty to breed, upon her return to the vendor.

5. SALES—*when contract rescinded by retention of subject after return by vendee.* Contract of sale of a cow was shown to be rescinded by both parties when vendor kept her after her return to him by the vendee for failure to breed as warranted.

Appeal by defendant from the Circuit Court of Vermilion county; the Hon. JOHN H. MARSHALL, Judge, presiding. Heard in this court at the April term, 1926. Affirmed. Opinion filed November 6, 1926.

ACTON, ACTON & SNYDER, for appellant.

GUNN, PENWELL & LINDLEY, for appellee.

MR. JUSTICE NIEHAUS delivered the opinion of the court.

In this case an appeal is prosecuted by the appellant, William Ryan, Jr., from a judgment in assumpsit, for $770, which was rendered against him in the circuit court of Vermilion county at the suit of the appellee, Lu Green, Jr. The appellee sues to recover for the purchase price of a cow (less the amount of a credit of $230, to which it is conceded the appellant is entitled), on account of an alleged breach of a warranty of the cow, which the appellant sold him. It appears from the evidence that the cow in question was purchased from the appellant at a public sale of registered breeding cattle at Danville, Illinois. The appellee testified that at this sale he purchased five head of cattle, including the cow mentioned, known as "Missie 176"; that Missie at the time of the sale had a calf at her side about 8 or 9 months old, and was represented to be with calf; that he went to the appellant before the sale and told him that he would like to bid on Missie but did not have any use for the calf at her side. And thereupon the appellant had the cow put up for sale without the calf, and he bought her. He also testified that before the purchase he inquired of the appellant, whether she was "due to calve" and that the appellant told him she was due to calve in the following fall, and that afterwards the auctioneer, who conducted the public sale, made the same representation with reference to the breeding condition of the cow when he put her up for sale, and before he bought her. The purchase price of the cow was $1,000, and the appellee gave his note therefor, and afterwards paid the same. The appellee also testified that in making his bid he relied on the statements of the appellant and the auctioneer, concerning the breeding qualities of the cow. He also testified that after he bought the cow she was shipped to him, and that he received the cow at his farm at In-

dianola in a very nice condition; that on the sixth day
of July the cow came in heat, and that she was then
bred to one of his registered short horn bulls, called
Master of Arts, but that she didn't get with calf; that
thereafter she was again bred to the same bull, also
regularly bred during that fall to several other bulls
without success, and that thereupon he notified the ap-
pellant that the cow had not been with calf, and that
thereupon the appellant told him that he could return
her to him; and that he would breed her; and that the
cow was then returned to the appellant early in the
following Spring of 1921. Appellee also testified that
after that he never received any notice from the ap-
pellant that the cow had been bred, or was ready to
be returned to him; that he had but one conversation
with the appellant about the cow after she was re-
turned, namely, in the latter part of the season of
1921; that at that time the appellant informed him
that he had a veterinary to treat the cow, "to see if
she could not get with calf." The appellee also tes-
tified to a general custom prevailing among traders
of registered breeding cattle, with reference to this
kind of cattle and cows sold at a public sale, and that,
according to this custom, if a cow doesn't get with calf,
she is returned to the seller, and bred to the seller's
bulls; that if she doesn't come with calf then, he either
returns the money to the purchaser, or he makes him
a different buy, or gives him another animal of like
value which is satisfactory. A number of witnesses
testified to the general custom prevailing in relation
to sales of breeding cattle. The evidence also shows
that after the cow in question had been returned,
appellant continued to hold her, and has retained pos-
session of her ever since that time; and the cow was
in his possession at the time of the trial, which was
more than four years after the cow had been returned
to him by the appellee. One of the grounds urged for
reversal of the judgment is that the evidence admitted

by the court concerning the general custom referred to was erroneous. We are of opinion, however, that the evidence was competent. It was proper for the jury to consider this custom in connection with the contract of sale, and the conduct of the parties with reference to the cow, after the sale, and after her return to the appellant. Where there is a general custom or usage of trade prevailing, the parties concerned are presumed to act and contract with reference to such custom and usage. *Doane v. Dunham*, 79 Ill. 131; *J. B. Lyon & Co. v. Culbertson, Blair & Co.*, 83 Ill. 33. A party dealing in a particular market is presumed to know all customs of that market bearing upon the transactions carried on, and to act in accordance therewith. *Bailey v. Bensley*, 87 Ill. 556; *Cothran v. Ellis*, 107 Ill. 413. And it is well settled that where a sale is made of breeding cattle, an implied warranty arises that the animals sold are fit for breeding purposes. 2 Mechem on Sales 1173, § 1354; *Edwards v. Dillon*, 147 Ill. 14. It was a controverted question in the case whether or not the appellee made his purchase based upon the representations and statements of the appellant and his auctioneer, as testified to by him, or made the purchase in accordance with the terms and conditions of the warranty set forth in the catalogue, which appellant had printed and circulated among prospective purchasers at his sale. Claude P. Madden, one of the auctioneers at the sale, testified that he "called the audience together and asked them to get on the seats, and I introduced Mr. Millne as the auctioneer; and Mr. Millne called their attention to the terms and conditions of the sale, on page 4 of the catalogue." But he also testified that all the cattle at the sale were sold as registered breeding cattle. And the testimony of Madden referred to does not appear to be contradictory of the testimony of the appellee concerning his conversation with the appellant before the sale, nor about the special an-

nouncements made by the auctioneer Millne in refer-
ence to the cow in question. There is also a sharp con-
flict in the evidence about the purpose for which the
appellee returned the cow to the appellant. The ap-
pellee testified that appellant told him he could return
her, and he would breed her to his bull, while the ap-
pellant's version of the same conversation is that the
appellee said to him, "Bill I have had bad luck with
Missie cow. She lost her calf." Whereupon, appellant
replied, "That's too bad. If you want to, you can
send her back over and I will breed her to the old bull
and won't charge anything for it." Appellee denied
that he ever told the appellant or anyone that the cow
Missie had lost her calf, and testified that Missie was
not with calf at the time of the sale, and that she never
had a calf after he purchased her. Whether the cow in
question was with calf at the time appellee purchased
her or not, and whether she was barren at the time of
the sale to the appellee, were controverted matters in
the case. It is contended by the appellant that the ver-
dict of the jury is manifestly against the weight of the
evidence on the questions of fact in issue. The deter-
mination of the weight of the evidence depended in
this case upon the credibility of the witnesses who tes-
tified, and especially the respective credibility of the
appellee and the appellant. It is evident from the
verdict that the jury reached the conclusion that the
appellee's version of the transactions and conversa-
tions between the parties was the most worthy of
credence, and we would not be justified in saying, in
considering the whole of the evidence, that they were
not warranted in reaching that conclusion. We cannot
say, therefore, that the verdict is against the weight
of the evidence, and under the circumstances here pre-
sented a court of review would not be warranted in
reversing the judgment on that ground. *Wentworth
v. Chicago City Ry. Co.*, 210 Ill. App. 116; *Alton Rail-
way, Gas & Electric Co. v. Seiferth*, 95 Ill. App. 134;

*Rackley v. Rackley,* 151 Ill. 332; *Illinois Life Ins. Co. v. Lindley,* 110 Ill. App. 161; *Springfield Consol. Ry. Co. v. Keiser,* 130 Ill. App. 56; *Kirlin v. Chittenden,* 176 Ill. App. 550; *Morgan v. Ryerson,* 20 Ill. 343. It is also contended that it was incumbent on the appellee, before his right of recovery was established, to make a demand on the appellant for a return of the purchase money. It may be said in reference to this contention that where an animal is warranted and fails to fulfil the warranty, it may be returned to the vendor by the vendee, and when returned the vendee thereupon becomes entitled to recover the purchase price paid, without any previous demand for repayment. *Morgan v. Ryerson, supra; Caswell v. Coare,* 1 Taunt. 566; *Kugel v. McEnroe,* 115 Ill. App. 419; *Woodford Distilling Co. v. Remington Typewriter Co.,* 174 Ill. App. 244; *Kennedy v. North Avenue Motor Sales Co.,* 211 Ill. 510. The inference is clear from the evidence that the contract of sale involved, after the return of the cow to the appellant, was treated by both parties as rescinded, and the permanent retention of the cow by the appellant without any explanation to the appellee, after the unsuccessful attempts which he made to get her with calf, justifies the conclusion that the appellant regarded the sale as rescinded in accordance with the custom referred to, and that the cow had again become his property. Both the appellant and appellee treated the cow as having been permanently returned to the appellant.

We find no substantial error in the instructions given for the appellee, nor in the refusal of instructions requested by the appellant. For the reasons stated, the judgment is affirmed.

*Affirmed.*